UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT MUSTAFA LA'HORI,

    Plaintiff,

v.      Case No. 3:23-cv-1307-WWB-MCR

ROBERT A. HARDWICK, et al.,

    Defendants.
_____

## ORDER

THIS CAUSE is before the Court on: (1) the Motion to Dismiss the Amended Complaint (Doc. 33), filed by Defendants Robert A. Hardwick ("**Sheriff Hardwick**"), Sergeant Domenic Giordano ("**Sergeant Giordano**"), John Franc McGuire ("**Deputy McGuire**"), Brian Armenta ("**Deputy Armenta**"), and Gavin Dane Higgins ("**Deputy Higgins**"); and (2) the Motion to Dismiss the Official Capacity Claims in the Amended Complaint (Doc. 42), filed by Defendant Thomas Bickhart ("**Sergeant Bickhart**").[1] Plaintiff has responded to these Motions. (*See* Doc. Nos. 40, 48).

## I.    INTRODUCTION

Plaintiff Robert Mustafa La'Hori, currently an inmate of the Florida Department of Corrections ("**FDC**"), is proceeding *pro se* and *in forma pauperis* on an Amended Complaint for alleged constitutional deprivations under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, based on events that occurred on March

---

[1] The only other Defendant named in the Amended Complaint, George Montgomery ("**Deputy Montgomery**"), has filed an Answer and Affirmative Defenses. (*See* Doc. 43).

25, 2023, while Plaintiff was an arrestee of the St. Johns County Sheriff's Office. (Doc. 28). The Amended Complaint identifies the following Defendants and the respective claims against them:

| **Defendants** | **Capacity** | **Claims** | **Constitutional Provisions** |
|---|---|---|---|
| Deputy Armenta | Individual | Excessive use of force; failure to intervene to prevent misuse of force | **Claim 3**: 4th and 8th Amendments; **Claim 5**: 4th and 8th Amendments |
| Sergeant Bickhart | Individual and official | Failure to take actions to curb the physical abuse | 4th and 8th Amendments (not listed as part of any Claim for Relief) |
| Deputy Higgins | Individual | Excessive use of force; failure to intervene to prevent misuse of force | **Claim 4**: 4th and 8th Amendments; **Claim 5**: 4th and 8th Amendments |
| Deputy McGuire | Individual | Excessive use of force; failure to intervene to prevent misuse of force | **Claim 1**: 4th and 14th Amendments; **Claim 2**: 8th Amendment; **Claim 5**: 4th and 8th Amendments |
| Deputy Montgomery | Individual | Failure to intervene to prevent misuse of force | **Claim 5**: 4th and 8th Amendments |
| Sergeant Giordano | Individual and official | Failure to follow specified criteria in handling Plaintiff's complaint | **Claim 6**: 14th Amendment |
| Sheriff Hardwick | Individual and official | Refusal to discipline deputies; deliberate indifference to Plaintiff's serious medical needs by delaying treatment | **Claim 7**: 14th Amendment; **Claim 8**: 8th Amendment; **Claim 9**: 8th Amendment |

The relevant facts, as alleged in the Amended Complaint and accompanying exhibits,[2] are as follows. On March 25, 2023, while Plaintiff was driving on I-95 northbound, Sergeant Bickhart gave orders over the transmission radio to unidentified officers to "do what [they] have to do." (Doc. 28 at 13). Deputies McGuire and Armenta then performed a Precision Immobilization Technique ("**PIT**") maneuver on Plaintiff's vehicle. (*Id.* at 13–14). Following the PIT, Plaintiff ran away on foot "alongside the woodline" of I-95. (*Id.* at 14). Deputy Armenta then tasered Plaintiff and together with Deputy McGuire tackled him to the ground. (*Id.*). While Plaintiff was face down on the ground, Deputy Armenta "mounted" him, pressed on his face with his right hand, and tasered him multiple times, even though he was not resisting. (*Id.* at 14–15). While Plaintiff was still not resisting, Deputy McGuire struck Plaintiff's "face and right eye multiple times," Deputy Montgomery held Plaintiff's feet "forcefully down [to] the grass," and Deputy Higgins "kneeled down with his knee [on] Plaintiff['s] back cutting off Plaintiff['s] breathing circulation," which made Plaintiff scream that he could not breathe. (*Id.* at 15–16). Deputies Armenta, Montgomery, and Higgins allegedly witnessed Deputy McGuire strike Plaintiff's "face and right eye, but did nothing to stop it or fix it, or report it to the supervisor." (*Id.* at 16).

Later the same day, Plaintiff was admitted to Flagler Hospital for facial injuries and trauma and transferred to Shands Hospital for surgery. (*Id.* at 16–17). He alleges that on March 26, 2023, unidentified officers of the St. Johns County Sheriff's Office interfered with and deprived him of his medical care. (*Id.* at 17). He was transferred to the St. Johns

---

[2] Plaintiff submits additional exhibits with his Response, (*see* Doc. Nos. 40-1–40-16), which the Court declines to consider at this stage, because it is unclear whether they are central to the claims and undisputed by Defendants.

3

County Jail and placed in the lockdown medical unit. (*Id.*). On April 20, 2023, unidentified officers transported him to Shands for surgical repair. (*Id.* at 18).

Plaintiff wrote a complaint to the St. Johns County Sheriff's Office, Internal Affairs Unit, about "the physical abuse and injuries" that Deputies Armenta, McGuire, Montgomery, and Higgins, and Sergeant Bickhart inflicted on him. (*Id.*). Sergeant Giordano determined there was no basis for an internal affairs investigation. (*Id.* at 18–19). Plaintiff alleges that Sheriff Hardwick knew of media reports of incidents involving his deputies, including this incident, but "failed to fix or admonish" Deputies Armenta, McGuire, Montgomery, and Higgins, and Sergeant Bickhart, for their alleged violation of rules and policies as pertaining to Plaintiff's injuries. (*Id.* at 19). Plaintiff seeks declaratory relief, compensatory, and punitive damages against Defendants. (*Id.* at 22–25).

Defendants advance several arguments for partial dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). First, they argue Plaintiff is not entitled to relief under the Eighth Amendment, because he was not a convicted prisoner at the time of the incident. (Doc. 33 at 5, 7). Further, they argue the individual capacity claims against Sheriff Hardwick must be dismissed, because Plaintiff does not allege any specific act or omission by the Sheriff individually. (*Id.* at 5). They also argue the official capacity claims against Sheriff Hardwick must be dismissed, because Plaintiff does not allege that any policy, custom, or practice of, or the failure to train or supervise by, the St. Johns County Sheriff's Office was the "moving force" behind the alleged violations of Plaintiff's constitutional rights. (*Id.*). In addition, Defendants argue the official capacity claims against Deputy McGuire[3] and Sergeants Giordano and Bickhart should

---

[3] It does not appear that Plaintiff is suing Deputy McGuire in his official capacity.

4

be dismissed either as duplicative to the official capacity claims against Sheriff Hardwick or for the same reasons that warrant the dismissal of the official capacity claims against Sheriff Hardwick. (*Id.*; Doc. 42 at 2–3). Defendants further contend Plaintiff fails to state a claim against Sergeant Giordano, because there are insufficient facts that his letter in response to Plaintiff's complaint deprived Plaintiff of any constitutional protections. (Doc. 33 at 5–6).

## II.     LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

As an initial matter, the Court agrees with Defendants that Plaintiff is not entitled to relief under the Eighth Amendment, because at the time of the incident he was not a convicted prisoner. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) (stating that where the plaintiff is a pretrial detainee rather than a convicted prisoner, the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, governs the court's analysis). By alleging violations of the Fourteenth Amendment in some claims, but not others, Plaintiff appears to be intentional about invoking the Fourteenth Amendment rather than the Eighth Amendment. However, instead of dismissing his Eighth Amendment claims with prejudice as Defendants suggest, the Court will dismiss those claims without prejudice. These claims include: the entirety of Claim 2 against Deputy McGuire, Claim 8 against Sheriff Hardwick, and Claim 9 against Sheriff Hardwick and the unnamed subordinates; and those parts of Claim 3 against Deputy Armenta, Claim 4 against Deputy Higgins, and Claim 5 against Deputies McGuire, Montgomery, Armenta, and Higgins, which are brought under the Eighth Amendment.

Further, the claims against Sheriff Hardwick must be dismissed for additional reasons. First, the individual capacity claims must be dismissed because Plaintiff does not allege either that Sheriff Hardwick personally participated in any constitutional violation or that there is a causal connection between his actions or omissions and the alleged constitutional deprivation. *See Smith v. Deal*, 760 F. App'x 972, 975 (11th Cir.

2019)[4] ("Supervisory officials cannot be held vicariously liable under section 1983 for the actions of their subordinates unless the supervisor 'personally participates in the alleged unconstitutional conduct' or 'there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010))).

> There are three ways to establish a causal connection between a supervisor's actions and the unlawful conduct: 1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; 2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or 3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (citations and quotations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotations omitted). This "standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1048 (11th Cir. 2014).

*Dickinson v. Cochran*, 833 F. App'x 268, 272 (11th Cir. 2020). Plaintiff has not alleged facts suggesting a causal connection between Sheriff Hardwick's conduct and any alleged constitutional violations. As such, the individual capacity claims against him must be dismissed for this additional reason.

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited as persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Second, the official capacity claims against Sheriff Hardwick must also be dismissed, because Plaintiff does not allege that any policy, custom, or practice of the St. Johns County Sheriff's Office was the "moving force" behind the alleged constitutional violations. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.' Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam) (internal citations and footnote omitted). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). A claim against a municipality may proceed under § 1983, but only when a plaintiff alleges that an action pursuant to a municipal policy or custom "caused a constitutional tort." *Id.* at 690–91. Thus, a plaintiff "must identify a municipal policy or custom that caused his injury." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc) (internal quotations omitted).

A plaintiff "has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Id.* "Because a county rarely will have an officially–adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the county has a custom or practice of permitting it and that the county's custom or practice is 'the moving force

8

[behind] the constitutional violation.'"[5]  *Id.* at 1330.  "Under either avenue, a plaintiff (1) must show that the local governmental entity . . . has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue."  *Id.*

Further, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality," but "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).  "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Id.*  "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably."  *Id.* at 405.  "Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."  *Id.*  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but

---

[5] "A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy," but "[a] single incident would not be so pervasive as to be a custom or practice."  *Grech*, 335 F.3d at 1330 (internal citations omitted); *see also Marantes v. Mia.-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (per curiam) ("To establish the existence of a custom, the plaintiff must show a 'longstanding and widespread practice.'" (internal citations omitted)); *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality.").

9

nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.*

Here, Plaintiff alleges that Sheriff Hardwick "failed to fix or admonish" Deputies Armenta, McGuire, Montgomery, and Higgins, and Sergeant Bickhart for their alleged violation of unspecified rules and policies that were broken when the officers stood by and witnessed their fellow officer (presumably Deputy McGuire) injure Plaintiff. (Doc. 28 at 19; *see also id.* at 16). Sheriff Hardwick also allegedly refused to discipline these officers for the use of force and was somehow deliberately indifferent to Plaintiff's serious medical needs. (*Id.* at 21–22). However, there are no allegations that the use of force or the deprivation of medical care were caused by any policy, custom, or practice of the St. Johns County Sheriff's Office. Further, Plaintiff does not allege that the Sheriff instituted a custom or policy that resulted in deliberate indifference to Plaintiff's constitutional rights, directed his subordinates to act unlawfully, or knew that they would act unlawfully and failed to stop them from doing so. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1331 (11th Cir. 2007) (citing *West v. Tillman*, 496 F.3d 1321, 1328–29 (11th Cir. 2007) (per curiam)). Thus, the Court will dismiss without prejudice Claims 7, 8, and 9 against Sheriff Hardwick. For the same reasons, the official capacity claims against Sergeants Giordano and Bickhart will also be dismissed.[6]

Finally, to the extent Plaintiff sues Sergeant Giordano in his individual capacity, Plaintiff fails to state a claim for relief in Claim 6. Plaintiff alleges that in response to his

---

[6] In light of this conclusion, the Court need not decide whether the official capacity claims against these Defendants are duplicative of those against Sheriff Hardwick.

complaint dated July 18, 2023, Sergeant Giordano's "judgment was there was no basis for an internal affairs investigation."[7] (Doc. 28 at 18–19, 27–31). Plaintiff avers Sergeant Giordano failed to follow "specified criteria of the St. Johns County Internal Affairs Policies and Rules" in handling his complaint in violation of the Fourteenth Amendment. (*Id.* at 21). However, Plaintiff fails to cite any specific policy or rule that was allegedly violated. Moreover, Plaintiff fails to plausibly allege that Sergeant Giordano's conduct deprived him of his constitutional rights. At bottom, Plaintiff's allegation is a mere disagreement with Sergeant Giordano's conclusion. Thus, the Court will dismiss Claim 6 without prejudice.

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motions to Dismiss (Doc. Nos. 33, 42) are **GRANTED in part** as stated herein and **DENIED** in all other respects.

2. The following claims are **DISMISSED without prejudice**: **the entirety of Claim 2** against Deputy McGuire, **Claim 6** against Sergeant Giordano, and **Claims 7, 8, and 9** against Sheriff Hardwick; **Claim 3** against Deputy Armenta, **Claim 4** against Deputy Higgins, and **Claim 5** against Deputies

---

[7] Plaintiff attaches Sergeant Giordano's response as an exhibit to his Amended Complaint. (*See* Doc. 28 at 26). It states, in pertinent part:

> The Sheriff's Office Internal Affairs unit has received your written complaint dated July 18, 2023 regarding injuries you received during your arrest on March 25, 2023, for two counts of Aggravated Assault on a Law Enforcement Officer, Fleeing and eluding, and Resisting with violence. After a review of your complaint and associated reports, all deputies involved in this incident performed their duties within the guidelines of Sheriff's Office policy and applicable Florida State Statute(s). It has been determined there is no basis for an Internal Affairs Investigation. Therefore, no further investigation will be conducted regarding this matter.

(*Id.*).

11

McGuire, Montgomery, Armenta, and Higgins, **to the extent** these claims are brought under the Eighth Amendment; and any claims against Sergeant Bickhard in his official capacity and claims brought against him under the Eighth Amendment.

3. The following claims remain[8]: **Claim 1** against Deputy McGuire; **Claim 3** against Deputy Armenta, **Claim 4** against Deputy Higgins, and **Claim 5** against Deputies McGuire, Montgomery, Armenta, and Higgins, **to the extent** these claims are brought under the Fourth Amendment; and any claims against Sergeant Bickhart in his individual capacity raised under the Fourth Amendment.

4. A separate order will enter setting case management deadlines.

**DONE AND ORDERED** in Jacksonville, Florida on December 20, 2024.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Jax-11 12/5

c:  Robert Mustafa La'Hori, #W62262
    Counsel of Record

---

[8] All remaining Defendants (Deputies McGuire, Armenta, Higgins, and Montgomery, and Sergeant Bickhart) have answered the Amended Complaint. (*See* Doc. Nos. 34, 35, 36, 41, 43).